7 P.3d 219

STATE of Idaho, Plaintiff–Appellant,

v.

James Otto NICKEL, Defendant–Respondent.

Nos. 25132, 25133.

Supreme Court of Idaho.
Boise, January 2000 Term.

Aug. 8, 2000.

Hon. Alan G. Lance, Attorney General, Boise, for appellant. Alison A. Stieglitz argued.

Wm. J. Brauner, P.A., Caldwell, for respondent. Timothy William Spencer argued.

KIDWELL, Justice.

The State of Idaho appeals from the district court's order granting defendant James Nickel's motion to suppress evidence of controlled substances recovered from his vehicle. We reverse.

## I.

### FACTS AND PROCEDURAL HISTORY

Canyon County Deputy Sheriff Donia Ballard received a call from dispatch shortly after 7:00 p.m. on a May evening. Dispatch relayed that a caller, who wished to remain anonymous, reported seeing a vehicle parked on a road in a field near the intersection of Farmway and Ustick Roads in early morning and late evenings several times in the preceding weeks. The caller reported that the vehicle was currently in the area and opined that its occupant might be "doing drugs," but did not articulate any reason for this suspicion.

Ballard responded to the dispatch and arrived in the area shortly before dusk. A vehicle was parked on a muddy dirt road surrounded by agricultural fields. The road paralleled a concrete irrigation ditch and came to a dead end in the fields of a farm belonging to Zelda Nickel. Three houses were in the general vicinity.

Ballard parked behind the vehicle. James Nickel was sitting in the driver's seat with the window rolled down. Ballard approached Nickel and explained that she had received a call about a suspicious vehicle and was checking out the report. Nickel told her his name and stated that he was "watching the corn grow." He told Ballard that he was on the property of his mother, Zelda Nickel, and pointed in the direction of his mother's house. Ballard later testified that she believed that Nickel was under the influence of something because he was uncooperative, his eyes seemed wild, and he was shaky. Although Ballard knew that Zelda Nickel lived in the vicinity, she did not believe Nickel when he told her he was on his mother's property.

Ballard asked Nickel for identification, and he handed her a copy of an expired temporary permit, issued pursuant to Section 18–8002 of the Idaho Code.[1] The record does not reveal how long Ballard kept the form or whether she returned it to Nickel. Nickel made no attempt to drive or walk away. Ballard returned to her patrol car and ran a check on Nickel's name. Her backup, Deputy William Adams, arrived about this time. The check with dispatch revealed an outstanding arrest warrant from the City of Caldwell. Ballard and Adams returned to the vehicle and Ballard asked Nickel to step out. He refused. After she asked several more times, Nickel eventually complied. Ballard then told him that he was under arrest. A brief scuffle ensued during which Adams used pepper spray to subdue Nickel.

After handcuffing Nickel, Ballard placed him in the back seat of her patrol car. As she was doing this, Adams searched the vehicle. On the passenger seat, Adams found a

---

[1]. If a person arrested for DUI refuses to submit to testing for alcohol, the officer will seize the person's driver's license and issue a temporary permit which allows the person to drive until the date of the hearing but not over 30 days. I.C. § 18–8002(4)(a). The permit, on a form prescribed by the Idaho Department of Law Enforcement, does not have a picture or description of the driver.

one-dollar bill wrapped around an off-white substance. The substance was removed from the vehicle. A field test indicated positive for methamphetamine; later tests at the Bureau of Forensic Services identified the substance as cocaine. Although Adams testified at the suppression hearing that his search of Nickel's vehicle was done as an inventory search, he did not fill out an inventory form. After the search, deciding that a tow truck would not be able to get the vehicle off the muddy road, Ballard and Adams decided to leave the vehicle where it was.

Ballard issued a misdemeanor citation to Nickel for resisting arrest. The Canyon County prosecutor filed a criminal information charging Nickel with possession of methamphetamine. Nickel pleaded not guilty to both charges. The district court later granted the State's motion to amend the information to charge Nickel with possession of cocaine.

Nickel moved to suppress all evidence stemming from the search of the vehicle. At the suppression hearing, the district court found that the road where Nickel was arrested was not a public roadway. It also concluded that Ballard did not have sufficient evidence to do a *Terry* [2] stop at the time she approached Nickel's car. The district court held that Nickel was seized for Fourth Amendment purposes "when Officer Ballard took Nickel's temporary driver's permit," and that the seizure was unreasonable. The court held that evidence from the search of the vehicle should be suppressed because it stemmed from the wrongful seizure of Nickel. The district court also rejected the State's argument that the evidence was obtained in a lawful inventory search of the vehicle following Nickel's arrest. The State filed a timely notice of appeal.

## II.

## STANDARD OF REVIEW

■ A trial court's decision on a motion to suppress evidence presents mixed questions of law and fact. *State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct. App.1992). When this Court reviews an or-

der granting or denying a motion to suppress evidence, it defers to the trial court's factual findings unless they are clearly erroneous. *State v. Bentley*, 132 Idaho 497, 499, 975 P.2d 785, 787 (1999). While the credibility and weight to be given evidence is in the province of the trial court, this Court exercises free review over questions of law, including whether constitutional requirements have been satisfied in light of facts found. *State v. Brauch*, 133 Idaho 215, 218, 984 P.2d 703, 706 (1999) (internal quotations omitted).

## III.

## ANALYSIS

### A. Ballard Did Not Seize Nickel in Violation of the Fourth Amendment by Taking His Expired Temporary Permit.

■ The district court held that "when Officer Ballard took Nickel's temporary driver's permit," Nickel was seized for Fourth Amendment purposes. At that point, the court stated, it was "clear from any objective point of view" that Nickel was not free to go about his business, and he could not leave until the officers backed their vehicles out of the private farm lane. On appeal, the State asserts that Ballard did not seize Nickel until Ballard learned of the outstanding arrest warrant.

■ The Fourth Amendment to the U.S. Constitution prohibits unreasonable seizures of persons or property. U.S. CONST. amend. IV. The Fourth Amendment is not implicated, however, by every contact between police and citizens. *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999). An encounter between police and an individual does not trigger Fourth Amendment scrutiny unless it is non-consensual. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). A seizure under the meaning of the Fourth Amendment occurs only "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868,

**2.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

1879 n. 16, 20 L.Ed.2d 889, 904–05 n. 16. "So long as a reasonable person would feel free to disregard the police and go about his business," an encounter between police and an individual is consensual. *Florida v. Bostick,* 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398. *See also Reese,* 132 Idaho at 653, 978 P.2d at 213.

◼ Up until the time that Ballard learned of the outstanding arrest warrant, she did not restrain Nickel's liberty for Fourth Amendment purposes. Although Nickel was on private property, Ballard could properly question him in an investigative context, even without reasonable suspicion that he had committed a crime. Interrogating a person concerning his identification or requesting identification does not, without more, constitute a seizure. *I.N.S. v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247, 255 (1984). *See also State v. Pick,* 124 Idaho 601, 602, 605, 861 P.2d 1266, 1267, 1270 (Ct.App.1993) (no seizure occurred when officer stopped behind car on shoulder of road and questioned driver). The district court made no finding that Ballard threatened or touched Nickel, displayed a weapon, or exhibited other intimidating behavior that would indicate that Nickel was not free to leave. *See Reese,* 132 Idaho at 653, 978 P.2d at 213 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)).

◼ The district court concluded that Ballard seized Nickel when she took his permit. We disagree. Nickel testified that he voluntarily complied with Ballard's request for identification. The *expired* permit which Nickel handed Ballard was not official identification and would not allow him to drive upon the public highways, so Ballard's possession of the expired permit did not prevent Nickel from leaving. This fact distinguishes this case from previous Idaho cases holding that a limited seizure occurred when law enforcement officials took the valid licenses

of persons operating vehicles upon the public highways. *See State v. Godwin,* 121 Idaho 491, 492–93, 826 P.2d 452, 453–54 (1992); *State v. Osborne,* 121 Idaho 520, 524, 826 P.2d 481, 485 (Ct.App.1991). Although as a practical matter the dead-end road and muddy conditions might have discouraged Nickel from departing, this is not dispositive for Fourth Amendment purposes. The Fourth Amendment is not implicated where factors independent of police conduct prevent an individual from departing. *Bostick,* 501 U.S. at 436–37, 111 S.Ct. at 2387, 115 L.Ed.2d at 399–400. *See also State v. Jordan,* 122 Idaho 771, 773–74, 839 P.2d 38, 40–41 (Ct.App.1992) (no seizure occurred when police questioned driver of car stopped at red light even though red light prevented driver from leaving).

Once Ballard learned of the outstanding warrant for Nickel's arrest, she detained and seized him. Nickel does not contend that seizure at this point violated the Fourth Amendment. Therefore, because Nickel was seized only after Ballard had probable cause to arrest him, we hold that Ballard's seizure of Nickel did not violate the Fourth Amendment.[3]

## B. The Search of Nickel's Vehicle Was a Lawful Search Incident to Arrest.

◼ At the suppression hearing, the State attempted to justify the seizure from Nickel's vehicle as an inventory search. The district court held that the search was not a lawful inventory search because the officers did not decide to take the vehicle into custody. We need not determine whether the seizure meets the requirements for an inventory search because the record establishes that it was a lawful search incident to arrest.

◼ "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York*

---

**3.** Nickel lists on his statement of issues on appeal whether he was seized in violation of Article I, Section 17 of the Idaho Constitution. Nickel does not, however, provide this Court with any argument or authority concerning the specific protections of the Idaho Constitution. Because

Nickel did not support the issue with argument or authority as required by I.A.R. 35(b)(6), we decline to address the issue. *See Lowder v. Minidoka County Joint Sch. Dist. No. 331,* 132 Idaho 834, 840, 979 P.2d 1192, 1198 (1999).

*v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 774 (1981). The identical rule applies to analysis under the Idaho Constitution. *See State v. Charpentier,* 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998).

In this case, Adams searched Nickel's vehicle immediately after Nickel had been placed under arrest. We have held that the seizure did not violate the Fourth Amendment. Therefore, the search of Nickel's vehicle was a lawful search incident to arrest.

## IV.

## CONCLUSION

Ballard did not seize Nickel in violation of the Fourth Amendment by taking his expired temporary permit. She subsequently made a valid arrest pursuant to an outstanding arrest warrant. Adams's search of the passenger compartment of Nickel's vehicle immediately after the arrest was a valid search incident to arrest. Because the deputies did not violate Nickel's Fourth Amendment rights, the district court erred in suppressing the evidence discovered as a result of the search. We reverse the order to suppress and remand to the district court.

Chief Justice TROUT, Justices SILAK and WALTERS concur.

Justice SCHROEDER, concurring in result.

I concur in the result but would base the decision on a determination that Nickel was seized, as determined by the district court, but that the seizure was an appropriate investigatory stop based upon a reasonable suspicion that Nickel might be involved in illegal activity.

The Court has determined that Nickel was not seized for Fourth Amendment purposes. However, the totality of the circumstances indicates that he was deprived of his freedom to a degree that should be considered a seizure. In practical terms he could not leave. The dirt road ahead of him dead-ended. The area around was very muddy. The deputy's vehicle behind him and a back-up sheriff's vehicle blocked his exit. The deputy took possession of his property. While the expired temporary permit might have had little use, it was Nickel's property, and it was held by the deputy. The totality of the circumstances indicates Nickel was seized, despite the deputy's disclaimers. However, the seizure was warranted.

It was appropriate for the deputy to go to the location upon the anonymous call. By itself the anonymous report was insufficient to seize Nickel. However, this was a high crime area. When the deputy approached Nickel she observed that he appeared to be under the influence of something. He was in the driver's seat at the time. He was uncooperative in identifying why he was there. The deputy had reasonable suspicion to make an investigatory seizure in the belief that there might be illegal activity. That led to discovery of an arrest warrant and the subsequent discovery of incriminatory evidence.