IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35289

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | Boise, February 2009 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2009 Opinion No. 69 |
| v. | ) | |
| | ) | Filed: May 12, 2009 |
| CHRISTOPHER WILLOUGHBY, | ) | |
| | ) | Stephen Kenyon, Clerk |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Honorable Charles W. Hosack, District Judge. Honorable Benjamin Simpson, Magistrate Judge

The decision of the district court is affirmed.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Jessica Lorello argued.

Frederick G. Loats, Coeur d'Alene, for respondent.

_____

HORTON, Justice

This appeal arises from a magistrate judge's order granting Respondent Christopher Willoughby's motion to suppress. The trial court held that law enforcement seized Willoughby without reasonable suspicion. The State appealed to the district court, which affirmed the trial court, and the Court of Appeals, which also affirmed. We granted the State's petition for review. We affirm the district court's decision affirming the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 4, 2005, at approximately 1:30 a.m., Officers Josh Gillmore and Timothy Carroll of the Coeur d'Alene Police Department received a dispatch report of a "physical fight" in the parking lot of an apartment complex located at 1053 W. Emma Avenue in Coeur d'Alene. Driving separate marked police cars, both officers "ran code" to the scene with their overhead lights and sirens activated. Officer Gillmore arrived in the parking lot first, followed closely by Officer Carroll.

1

Officer Gillmore observed Willoughby's car parked perpendicularly to other cars in the parking lot, blocking the other cars in their stalls. Willoughby was in the driver's seat and there were four other people around his car, one of whom had just gotten out of the car as Officer Gillmore arrived. Officer Carroll observed Willoughby's vehicle and two other people walking away towards an apartment. Neither officer observed a fight upon arrival.

Officer Gillmore parked his police car approximately fifteen feet from Willoughby's vehicle and Officer Carroll parked his car somewhat behind and on the driver's side of Officer Gillmore's vehicle. Both officers left their emergency lights on after their arrival. Although each officer created a diagram of the scene during their testimony before the trial court, the diagrams were not preserved for the record. Thus, the record does not clearly demonstrate where the officers' vehicles were in relation to Willoughby's car nor does the record reflect whether the patrol cars were parked in a fashion so as to prevent Willoughby from driving away.

Officer Carroll first made contact with the two people walking away and asked them if they had any information regarding a fight in the parking lot. They reported that they did not. As Officer Carroll was speaking to these individuals, Officer Gillmore identified himself and approached the group of people outside Willoughby's vehicle and asked if they had any knowledge of a fight. Each person in the group denied awareness of a fight. Officer Gillmore then moved closer to Willoughby's vehicle and Willoughby stepped out. While asking Willoughby if he had any information regarding the fight, Officer Gillmore noticed the odor of alcohol and that Willoughby's eyes appeared glassy. As a result of these observations, Officer Gillmore suspected that Willoughby might be under the influence of alcohol. By this time, Officer Carroll had finished speaking to the two people that had been headed towards the apartment complex and had returned to make contact with Officer Gillmore. Officer Gillmore asked Officer Carroll to conduct a further investigation to determine whether Willoughby was under the influence of alcohol. Officer Carroll subsequently arrested Willoughby for driving under the influence.

Willoughby moved to suppress all evidence acquired as a result of the contact with the officers. After an evidentiary hearing, the trial court issued findings of fact and conclusions of law and suppressed the evidence. The State timely appealed to the district court, which affirmed the decision of the trial court. The State timely appealed and the case was assigned to the Court

2

of Appeals. The Court of Appeals affirmed the decision of the trial court. This Court granted the State's Petition for Review.

## II. STANDARD OF REVIEW

When reviewing a decision of the district court acting in its appellate capacity, this Court reviews the trial court record to determine whether there is substantial and competent evidence to support the magistrate judge's findings of fact and whether the magistrate judge's conclusions of law follow from those findings. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (citing *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)). If the district court affirmed the trial court's decision because the trial court's findings were so supported and its conclusions followed therefrom, then, as a matter of procedure, this Court affirms the district court's decision. *Id*. When considering a case on review from the Court of Appeals, this Court gives serious consideration to the views of the Court of Appeals. *State v. Jenkins*, 143 Idaho 918, 920, 155 P.3d 1157, 1159 (2007) (citing *State v. Benefiel*, 131 Idaho 226, 228, 953 P.2d 976, 978 (1998)).

When reviewing a motion to suppress, the standard of review is bifurcated. This Court defers to the trial court's findings of fact unless the findings are clearly erroneous. *State v. Hankey*, 134 Idaho 844, 846, 11 P.3d 40, 42 (2000) (citing *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999)). This Court freely reviews the trial court's application of constitutional principles to the facts as found. *Hankey*, 134 Idaho at 846, 11 P.3d at 42 (citing *State v. Harvill*, 131 Idaho 720, 721, 963 P.2d 1157, 1158 (1998)).

## III. ANALYSIS

The State argues that the trial court erred when it concluded that law enforcement seized Willoughby and alternatively, that if Willoughby was seized, the seizure was based upon reasonable suspicion.

### A. On the record before this Court, we must conclude that Willoughby was seized.

The Fourth Amendment to the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures. When a defendant seeks to suppress evidence that is alleged to have been obtained as a result of an illegal seizure, the defendant bears the burden of proving that a seizure occurred. *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004) (citing *Reese*, 132 Idaho at 654, 978 P.2d at 214). "The test to determine if an individual is seized for Fourth Amendment purposes is an objective one" requiring an evaluation

3

of "the totality of the circumstances." *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007).

An encounter between a law enforcement officer and a citizen does not trigger Fourth Amendment scrutiny unless it is nonconsensual. *State v. Baker*, 141 Idaho 163, 165, 107 P.3d 1214, 1216 (2004) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "A seizure under the meaning of the Fourth Amendment occurs only 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *State v. Nickel*, 134 Idaho 610, 612, 7 P.3d 219, 221 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

A seizure initiated through a show of authority requires words or actions, or both, by a law enforcement officer that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement. *State v. Maland*, 140 Idaho 817, 820, 103 P.3d 430, 433 (2004) (citing *California v. Hodari D.*, 499 U.S. 621 (1991)). If a reasonable person would feel free to disregard the law enforcement officer, then the encounter is consensual. *Page*, 140 Idaho at 843-44, 103 P.3d at 456-57 (citing *Nickel*, 134 Idaho at 613, 7 P.3d at 222); *see also Brendlin v. California*, 551 U.S. 249, ___, 127 S.Ct. 2400, 2405-06 (2007). There is no seizure unless the individual actually submits to the officer's show of authority. *Hodari D.*, 499 U.S. at 626-29; *State v. Agundis*, 127 Idaho 587, 590-91, 903 P.2d 752, 755-56 (Ct. App. 1995).

Thus, in this appeal, we must decide two questions in order to determine whether Willoughby was seized for purposes of the Fourth Amendment: (1) whether the officers' show of authority was such that a reasonable person would not feel free to leave; and (2) whether Willoughby submitted to that show of authority.

1. The absence of a complete record requires us to conclude that the officers' show of authority was such that a reasonable person would not feel free to leave.

The district court, citing *State v. Mireles*, 133 Idaho 690, 991 P.2d 878 (Ct. App. 1999), concluded that "[a] police officer's act of turning on the overhead lights, although not necessarily intended to create a detention, does constitute a technical, *de facto*, detention commanding the individual to remain in place pursuant to I.C. § 49-625." In *Mireles*, a sheriff's deputy received a radio communication regarding suspicious activity involving a vehicle. *Id.* at 691, 991 P.2d at 879. The deputy located the vehicle and followed it for a quarter of a mile. The vehicle, driven by Mireles, then abruptly pulled over to the shoulder of the road, stopping with half of the vehicle still in the traffic lane. The deputy also pulled his patrol car over to the side of the road

4

and then activated his emergency lights, intending to find out whether the motorist needed assistance. *Id*. The Court of Appeals concluded:

> [The deputy's] act of turning on the overhead lights, although not necessarily intended to create a detention, did constitute a technical, *de facto* detention commanding Mireles to remain stopped pursuant to I.C. § 49-625. A person is seized within the meaning of the Fourth Amendment if, in view of all the circumstances, a reasonable person would have believed he or she was no longer free to leave. *State v. Waldie*, 126 Idaho 864, 866, 893 P.2d 811, 813 (Ct. App. 1995). Once [the deputy] activated the police car's emergency lights, Mireles, assuming he was cognizant of the fact, was not free to drive away. *See* I.C. § 49-1404 (prohibiting fleeing or attempting to elude a police officer when signaled to stop by the officer's emergency lights and/or siren).

*Id*. at 692, 991 P.2d at 880.

The State argues that reliance on *Mireles* and I.C. §§ 49-625 and 49-1404 to conclude that Willoughby was seized is misplaced. Although we agree in part with the State's analysis, we are unable to agree with its conclusion that Willoughby was not seized.

Idaho Code § 49-625(1) provides as follows:

> Upon the immediate approach of an authorized emergency or police vehicle making use of an audible or visible signal, meeting the requirements of section 49-623, Idaho Code, the driver of every other vehicle shall yield the right-of-way and immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the highway lawful for parking and clear of any intersection, and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer.

In the context of this case, Willoughby was not the "driver" of a stationary vehicle not located on a highway. Thus, the statute does not directly apply.

Idaho Code § 49-1404(1) provides: "Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor." As Willoughby was already parked and made no effort to leave, the statute has no facial application as the officers' overhead lights cannot be said to have been a "signal to bring the vehicle to a stop."

Our conclusion that these criminal statutes do not directly apply does not lead inexorably to the conclusion that the trial court and the district court erred. Our decision turns on the question whether the officers' use of overhead emergency lights in close proximity to a parked vehicle constitutes a show of authority "that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement." *Maland*, 140 Idaho at 820, 103 P.3d at

5

433. Although we do not hold that a law enforcement officer's action of turning on his vehicle's overhead lights creates a *de facto* seizure commanding the driver to remain stopped pursuant to I.C. §§ 49-625 and 49-1404, the use of overhead lights is a significant factor a court must consider when considering the totality of the circumstances. *See Commonwealth of Pennsylvania v. Krisko*, 884 A.2d 296, 300-01 (2005) (holding that activation of overhead lights by law enforcement in response to a car already pulled off the road does not always indicate compulsory detention of the driver, but is a strong indication of a seizure where the driver has no reason to believe that an officer is simply rendering aid to the stationary vehicle). As the Maryland Court of Special Appeals has noted, "[f]ew, if any, reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for them to remain." *Lawson v. State*, 707 A.2d 947, 951 (Md. App. 1998).

Unfortunately, at least from the State's perspective, the record in this case does not allow this Court to conduct a complete evaluation of the totality of the circumstances. At the suppression hearing, the trial court had the benefit of listening to the testimony of both officers and viewing diagrams drawn by the officers illustrating the layout of the parking lot complete with Willoughby's vehicle and the officers' vehicles. Although we have a transcript of the officers' testimony, the record before this Court does not reflect the layout of the parking lot, including the location and number of exits nor does the record reflect whether the officers parked their vehicles behind or in front of Willoughby's vehicle or whether the officers' vehicles would have impeded any effort by Willoughby to leave had he so desired. A law enforcement officer's action to block a vehicle's exit route is a factor a court may consider when determining if a seizure has occurred. W. LAFAVE, SEARCH AND SEIZURE § 9.2(h) at 413-14 (2d. ed. 1987); s*ee also State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 n.1 (Ct. App. 2002) (noting that it was undisputed that law enforcement officer's act of parking his vehicle, with the vehicle's overhead emergency lights activated, in such a way as to block an exit route constituted a seizure of a parked vehicle in which the defendant was a passenger).

This Court will not presume error on appeal, and an appellant bears the burden of demonstrating error through the record. *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 72, 878 P.2d 762, 771 (1994) (citing *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980)). When a party appealing an issue presents an incomplete record, this Court will presume

that the absent portion supports the findings of the trial court. *Slack v. Kelleher*, 140 Idaho 916, 924, 104 P.3d 958, 966 (2004) (citing *Gibson v. Ada County,* 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003)). Accordingly, we must conclude that the officers' actions were a show of authority "that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement."

    2.  <u>Willoughby submitted to the officer's show of authority.</u>

Certainly, not every motorist who observes a police vehicle's activated overhead lights has been seized. Rather, the motorist must actually submit to the show of authority. *Hodari D.*, 499 U.S. at 626-69; *Agundis*, 127 Idaho at 590-91, 903 P.2d at 755-56. The question presented by this appeal is whether Willoughby's actions of remaining at the scene and stepping from the car as Officer Gillmore approached him constituted submission to the officers' show of authority. We conclude that it did.

The Kansas Supreme Court addressed the difficult question presented in cases of passive acquiescence to an ambiguous show of authority in similar circumstances in *State v. Morris*, 72 P.3d 570 (Kan. 2003). After considering a number of decisions from other courts regarding whether the use of emergency lights constituted a show of authority,[1] the court stated:

---

[1] The *Morris* court noted the following cases which concluded that the use of emergency lights resulted in a seizure:

> Applying one analysis or the other, most appellate courts considering the issue have concluded a seizure occurs when the officer activates emergency lights. See *Hammons v. State*, 940 S.W.2d 424 (Ark. 1997) (defendant sitting in parked automobile was seized when police activated blue light; light was display of authority that would indicate to reasonable person he was not free to leave); *People v. Bailey*, 176 Cal.App.3d 402, 406, 222 Cal.Rptr. 235 (1985) (officer pulled in behind parked car and activated emergency lights; defendant seized as reasonable person would not have felt free to leave); *State v. Donahue*, 742 A.2d 775 (Conn. 1999) (defendant was seized when officer pulled up behind parked vehicle and activated red, yellow, and blue flashing lights); *Hrezo v. State*, 780 So.2d 194, 195 (Fla. 2d DCA 2001) (when a police officer turns on the emergency and takedown lights to a lawfully parked vehicle, a reasonable person would expect to be stopped if he or she drove away); *Lawson*, 120 Md.App. at 616-17, 707 A.2d 947 (the activation of the emergency lights was a show of authority that constituted a seizure because it communicated to a reasonable person in the parked car that there was an intent to intrude upon the defendant's freedom to move away); *State v. Walp*, 672 P.2d 374 (Or. App. 1983) (use of emergency lights after defendant had voluntarily stopped was sufficient show of authority and reasonable person would not have felt free to leave); *State v. Gonzalez*, 52 S.W.3d 90, 97 (Tenn. Crim. App. 2000) (a police officer clearly initiates a seizure by turning on his blue lights behind a parked vehicle because the lights convey the message that the occupants are not free to leave); *State v. Burgess*, 657 A.2d 202 (Vt. 1995) (even if officer subjectively intends to activate his blue lights for safety reasons, the use of the lights on the defendant served as a restraint to prevent his departure from the pull-off area of the road); *Wallace v. Com.*, 528 S.E.2d 739 (Va. App. 2000) (driver of parked vehicle seized because a reasonable person with a police cruiser parked behind him with its emergency lights flashing would not have felt free to leave); *State v. Stroud*, 634 P.2d 316 (Wash. App. 1981) (occupants of parked vehicle seized at moment where officers pulled up

7

Where there is neither force nor obvious words or actions of submission, some courts have applied the *Mendenhall* approach without reference to *Hodari*. *E.g., United States v. Buchanon*, 72 F.3d 1217 (6th Cir. 1995). Other courts have determined that the individual's inaction, albeit passive, is a form of compliance and a submission to authority. *E.g., Lawson*, 120 Md.App. at 617-18, 707 A.2d 947 . . . .

We join this line of cases in terms of outcome, doing so by following the line of cases which hold that *Hodari*, and in this state our decision in [*State v. Weaver*, 915 P.2d 746 (1996)], requires a finding that the accused submitted to the show of authority. In this case, Morris did not attempt to leave when officers pulled in behind him with their emergency lights flashing. Upon seeing the flashing emergency lights of the officer's patrol car, Morris complied with the officer's "show of authority" enjoining him to remain. He did not flee; instead, he complied with the assertion of authority. We find that Morris was seized within the contemplation of the Fourth Amendment to the United States Constitution . . . .

*Id.* at 578-79.

We concur with the reasoning and conclusion of the Kansas court. Willoughby's actions of remaining at the scene and stepping out of his car as Officer Gillmore approached constituted submission to the officers' show of authority. Accordingly, we conclude that the trial court and district court properly concluded that Willoughby was seized for purposes of the Fourth Amendment. This brings us to the question of whether the seizure violated Willoughby's right to be free from unreasonable seizure.

## B. The trial court correctly concluded that law enforcement seized Willoughby without reasonable articulable suspicion.

In *State v. Rawlings*, 121 Idaho 930, 829 P.2d 520 (1992), this Court explained the standards governing *Terry* detentions as follows:

Not all seizures of the person need be justified by probable cause to arrest for a crime; a police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime . . . . Whether an officer had the requisite reasonable suspicion to conduct

---

behind parked vehicle and switched on flashing light because "the officers' attempt to summon the occupants of the parked car with both their emergency lights and high beam headlights constituted a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative" and, had driver attempted to leave after being so signaled, he could arguably have been charged with misdemeanor).

572 P.3d at 578-79.

an investigatory stop is determined on the basis of the totality of the circumstances.

121 Idaho at 932, 829 P.2d at 522 (additional citations omitted). Whether reasonable and articulable suspicion supports a *Terry* detention is an objective test that does not depend upon the individual officer's subjective thought processes. *Deen v. State*, 131 Idaho 435, 436, 958 P.2d 592, 593 (1998).

Both the trial court and the district court on appeal concluded that Willoughby was seized without reasonable suspicion. Both courts concluded that the anonymous tip relayed by police dispatch that there was a fight in progress at the parking lot was without sufficient indicia of reliability to support a finding of reasonable and articulable suspicion.

On appeal, the State asserts that although "law enforcement must corroborate the details of a tip before detaining someone based on the tip, that principle only applies where law enforcement is conducting an investigatory detention of a particular individual." The State further argues that it was reasonable to seize Willoughby because "it was reasonable for the officers to believe that the group of people standing in the parking lot may have either been involved in a fight or witnessed the reported fight."[2] We will discuss these contentions in turn.

1. The seizure of any individual requires, at a minimum, reasonable and articulable suspicion.

The State cites *Alabama v. White*, 496 U.S. 325 (1990) and *State v. Hankey,* 134 Idaho 844, 846, 11 P.3d 40, 42 (2000) in support of its contention that "law enforcement must corroborate the details of a tip before detaining someone based on the tip, that principle only applies where law enforcement is conducting an investigatory detention of a particular individual."

Neither case stands for the proposition for which it is cited. In *White*, the United States Supreme Court determined that, under the totality of the circumstances, an anonymous tip was sufficiently corroborated because the tip predicted detailed future behavior that was independently observed by law enforcement officers. 496 U.S. at 331-32. The decision does not hint, much less hold, that the Fourth Amendment's reasonableness requirement is relaxed merely because the individual is not alone. Similarly, in *Hankey*, this Court determined that an

---

[2]   Although the State has not addressed the fact that Willoughby was not among the group of people standing in the parking lot, we infer that the State is contending that it was reasonable to seize any person in the parking lot, including Willoughby, because that person may have been involved in the altercation or been a witness thereto.

9

anonymous tip relayed by a dispatcher was corroborated by independent observations of the police officer. 134 Idaho at 847-48, 11 P.3d at 43-44. This Court simply did not hold that law enforcement need not corroborate the details of an anonymous tip in order to detain a group of individuals.

In the absence of compelling authority to the contrary, we cannot conclude that an individual who happens to be in the company of others at the time of contact with law enforcement officers may be lawfully seized upon less than reasonable and articulable suspicion.

2. There was not reasonable and articulable suspicion justifying Willoughby's detention.

The State argues that it was reasonable, based upon the information they received from police dispatch, for the officers to believe that the group of people standing in the parking lot may have either been involved in a fight or witnessed the fight. In order to justify an investigatory stop, a law enforcement officer must have "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." *Hankey*, 134 Idaho at 847, 11 P.3d at 43 (quoting *U.S. v. Cortez*, 449 U.S. 411, 417 (1981) and citing *Terry*, 392 U.S. at 1; *State v. DuValt*, 131 Idaho 550, 552-53, 961 P.2d 641, 643-44 (1998)). An officer's suspicion must be grounded on specific articulable facts and rational inferences drawn from those facts. *Id*. (citing *Terry*, 392 U.S. at 21; *State v. Gallegos*, 120 Idaho 894, 896-97, 821 P.2d 949, 951-52 (1991)). An anonymous tip alone cannot supply the requisite basis for reasonable suspicion. *Id*. at 848; 11 P.3d at 44 (citing *White*, 496 U.S. at 326). However, an anonymous tip may contribute to the necessary reasonable suspicion when coupled with the officer's own corroboration of significant details of the tip. *Id*. (citing *White*, 496 U.S. at 326).

In *Hankey*, a law enforcement officer received a message from dispatch that there was a domestic dispute involving a blue Mazda pickup at a certain intersection. *Id*. at 845-46, 11 P.3d at 41-42. This Court treated this information as an anonymous tip, stating "it is clear that the anonymous information received by the officer through police dispatch would be insufficient by itself to justify an investigatory stop." *Id.* at 848, 11 P.3d at 44. Although we held that the anonymous information was insufficient to justify an investigatory stop, the information was entitled to some weight when considered with other facts known to the officer. *Id*. Before receiving the information from police dispatch, the officer had observed a blue Mazda pickup following a woman and a child on the shoulder of a road near the intersection mentioned by police dispatch. This Court concluded that the unusual activity that the officer had initially

10

observed with the pickup following the woman and child sufficiently corroborated the information in the radio dispatch to provide the requisite reasonable suspicion to make an investigatory stop to determine if the woman and child were in danger or had been harmed. *Id.*

In the instant case, the officers received a message from police dispatch that there was a physical fight in the parking lot located at 1053 W. Emma Avenue. The officers received no other details from police dispatch. Upon arriving at the parking lot, neither Officer Gillmore nor Officer Carroll observed a physical fight. There were no other details of the tip to corroborate. Consequently, the officers did not have reasonable suspicion to make an investigatory stop of Willoughby as a potential suspect.

The State's argument that the detention of the people in the parking lot was justified because they were potential witnesses is similarly without merit. Although this Court has yet to determine that an investigatory detention of a potential witness is permissible, we note that courts in other states have determined that such detentions may not be inconsistent with the Fourth Amendment prohibition against unreasonable seizures. Alaska is one such state. In *Metzker v. State*, 797 P.2d 1219 (Alaska App. 1990), the Alaska court of appeals stated:

> Under appropriate circumstances, a police officer may approach and stop a person for the purpose of investigating a crime even though the officer has no reason to believe that the person stopped has committed the crime which is being investigated. 3 W. LaFave, Search & Seizure § 9. 2(b), at 353-57 (1987). However, courts generally seem to be in agreement that the fourth amendment does not allow the police to stop potential witnesses to the same extent as suspects of a crime.

*Id.* at 1221. Assuming, without deciding, that detention of a potential witness is permissible, there is simply no basis for this Court to apply a lower standard of reasonable suspicion to potential witnesses than is applied to potential suspects. As there was not reasonable suspicion justifying Willoughby's detention as a potential suspect, we conclude that the State has failed to demonstrate justification for detaining him as a potential witness.

### IV. CONCLUSION

We affirm the decision of the district court affirming the decision of the trial court suppressing all evidence obtained by law enforcement as a result of the seizure.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem TROUT **CONCUR.**

11