# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38692

STATE OF IDAHO,              )

                               )      **Coeur d'Alene, April 2012 Term**

       **Plaintiff-Appellant,**    )

                               )      **2012 Opinion No. 96**

v.                           )

                               )      **Filed: June 29, 2012**

IRVIN C. RAY,          )

                               )      **Stephen W. Kenyon, Clerk**

       **Defendant-Respondent.**   )

                               )

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Bonner County. The Hon. Steven C. Verby, District Judge.

The order of the district court is <u>reversed</u>.

Lori Anne Fleming, Deputy Attorney General, Boise, argued for appellant.

Valerie P. Thornton, Sandpoint, argued for respondent.

---

EISMANN, Justice.

This is an appeal from an order suppressing evidence. A law enforcement officer following two vehicles turned on the overhead lights of his patrol car in order to pull over the lead vehicle. Both vehicles pulled over, and the officer parked his car behind the lead vehicle and several car lengths in front of the rear vehicle. When the officer got out of his car, he walked back to the rear vehicle to tell the driver he was only stopping the lead vehicle. The district court held that by walking towards the rear vehicle, the officer seized its occupants without a reasonable, articulable suspicion that they had violated any law. We reverse.

## I.

### Factual Background.

The relevant facts in this matter are uncontradicted. After dark on March 17, 2009, a state trooper was driving his patrol car west on a two-lane state highway when he saw a silver Subaru station wagon approaching from the opposite direction. The Subaru had one headlight

that was out, and after it passed him the trooper made a U-turn in order to pursue the Subaru. By the time he had turned around, there was a red Toyota pickup following closely behind the Subaru. Because the highway was a narrow, two-lane road and the Toyota was close behind the Subaru, the trooper was unable to pass the Toyota in order to pull directly behind the Subaru.

As the Subaru was approaching a turnout along the right side of the highway, the trooper activated the overhead lights on his patrol car. The Subaru pulled into the turnout and drove to a point near its far end. The Toyota also pulled into the turnout and stopped at a point near where the turnout began, but the point at which it stopped left enough room for the patrol car to park behind it in the turnout had the trooper wanted to do so.

The trooper drove his car past the Toyota and stopped directly behind the Subaru, in order to create as much space as he could between his patrol car and the Toyota. The distance from the back of the patrol car to the front of the Toyota was about three to five car lengths. About eight seconds passed between the time the trooper passed the Toyota and when he opened his vehicle door to get out. Upon exiting his patrol car, the trooper walked back to the Toyota to tell the driver that he was stopping the Subaru and that the driver of the Toyota was free to go. About sixteen seconds passed between the trooper opening his car door and him saying "Hello" to the driver of the Toyota.[1]

When the trooper walked up to the Toyota, the driver rolled his window down part way, and the trooper immediately smelled marijuana. He ultimately arrested the passenger, Irvin C. Ray, for felony possession of more than three ounces of marijuana. Ray concedes that if he had not been unlawfully seized when the trooper walked up to the Toyota, then the discovery and seizure of the marijuana were lawful.

Ray was charged with misdemeanor possession of drug paraphernalia with the intent to use and felony possession of more than three ounces of marijuana. The charges were made in two separate cases, which were then consolidated in the district court, although the order of consolidation is not in the record.

On May 22, 2009, Ray moved in both cases to suppress evidence seized from his backpack. The evidentiary hearing on that motion was held on July 21, 2009, and the trooper

---

[1] The time that elapsed between these events is based upon the hour, minute, and second display on the video taken from the dashboard camera in the patrol car and the sound recording of that video.

was the only witness. At the conclusion of the hearing, the district court announced its holding. It held that when the trooper began walking toward the Toyota, he unlawfully seized its occupants. The court orally granted the motion to suppress, and then entered a written order granting the motion on July 27, 2009.

After the court orally announced its ruling, the prosecutor suggested that the cases be dismissed. The defense counsel then made the motion, and the prosecutor stated that he had no objection. The court granted the motion, dismissing both cases. The order dismissing the misdemeanor case was entered on July 21, 2009.

An order granting a motion to suppress evidence is appealable. I.A.R. 11(c)(7). The State filed a notice of appeal on August 5, 2009. The deputy attorney general who filed the notice of appeal was unaware that there were two cases, and he only filed a notice of appeal in the misdemeanor case.

The appeal was first heard by the Idaho Court of Appeals, which affirmed the district court's order suppressing the evidence. We then granted the State's petition for review. When we grant a petition for review, we hear the case anew, directly reviewing the decision of the trial court and not the decision of the Court of Appeals. *Head v. State*, 137 Idaho 1, 2, 43 P.3d 760, 761 (2002).

## II.

### Analysis.

In 1927, the Idaho legislature enacted a statute requiring the driver of a motor vehicle to pull over and stop "[u]pon the approach of any police or fire department vehicle giving audible signal by bell, siren or exhaust whistle" and to remain stopped "unless otherwise directed by a police or traffic officer until the police or fire department vehicle shall have passed." Ch. 260, § 20, 1927 Idaho Sess. Laws 482, 491. In 1953, the legislature changed the requirement so that a driver was only required to yield if the authorized emergency vehicle also had "at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle," but the legislature exempted police vehicles from the requirement of having a red light. Ch. 273, §§ 25.1 & 86, 1953 Idaho Sess. Laws 478, 485-86, 509. The legislature also defined an authorized emergency vehicle to include "such ambulances and emergency vehicles of municipal departments or public service corporations as are

3

designated or authorized by the commissioner or by the chief of police of an incorporated city or village." Ch. 273, § 2(e), 1953 Idaho Sess. Laws 478, 479. In 1977, the legislature required drivers to pull over and stop at the approach of authorized emergency vehicles that were "making use of an audible or visible signal" that met statutory requirements. Ch. 152, § 2, 1977 Idaho Sess. Laws 337, 368-69.

In 1977, an authorized emergency vehicle was defined as, "Vehicles operated by any fire department or law enforcement agency of the state of Idaho or any political subdivision thereof, and ambulances of any public utility or public service corporation." Ch. 152, § 2, 1977 Idaho Sess. Laws 337, 349. In subsequent years, the legislature greatly expanded the definition of an authorized emergency vehicle so that it currently is as follows:

> Vehicles operated by any fire department or law enforcement agency of the state of Idaho or any political subdivision of the state, ambulances, vehicles belonging to personnel of voluntary fire departments while in performance of official duties only, vehicles belonging to, or operated by EMS personnel certified or otherwise recognized by the EMS bureau of the Idaho department of health and welfare while in the performance of emergency medical services, sheriff's search and rescue vehicles which are under the immediate supervision of the county sheriff, wreckers which are engaged in motor vehicle recovery operations and are blocking part or all of one (1) or more lanes of traffic, other emergency vehicles designated by the director of the Idaho state police or vehicles authorized by the Idaho transportation board and used in the enforcement of laws specified in section 40-510, Idaho Code, pertaining to vehicles of ten thousand (10,000) pounds or greater.

I.C. § 49-123(2)(b).

The current version of the statute requiring a driver to pull over and stop upon the approach of an authorized emergency vehicle or a police vehicle is as follows:

> **Operation of vehicles on approach of authorized emergency or police vehicles.** (1) Upon the immediate approach of an authorized emergency or police vehicle making use of an audible or visible signal, meeting the requirements of section 49-623, Idaho Code, the driver of every other vehicle shall yield the right-of-way and immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the highway lawful for parking and clear of any intersection, and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer.
>
> (2) This section shall not operate to relieve the driver of an authorized emergency or police vehicle from the duty to drive with due regard for the safety of all persons using the highway.

4

I.C. § 49-625 (2008).

The current statute provides that upon the approach of an authorized emergency or police vehicle using an audible or visual signal that meets statutory requirements, the driver of every other vehicle shall immediately pull over "and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer." *Id.* The driver is required to pull over and stop whether the approaching vehicle is a fire engine, an ambulance, a search and rescue pickup, or a police car. As soon as such approaching vehicle has passed, the driver is free to resume his or her journey, "except when otherwise directed by a peace officer." The obvious purpose of requiring the driver to pull over and stop until the emergency or police vehicle has passed is to prevent the driver's vehicle from impeding the emergency or police vehicle.

A driver who pulls over and stops as required by section 49-625 has not been seized, any more than has a driver who is required by law to stop upon approaching a school bus displaying visual signals, I.C. § 49-1422, or at a railroad crossing displaying visual signals, I.C. § 49-648, or at a flashing red traffic signal, I.C. § 49-804(1), or at a steady red traffic signal, I.C. § 49-802(3). Even when the patrol car is approaching from the rear with its overhead lights flashing, the driver does not know whether the officer wants him to stop or simply to pull over to get out of the officer's way. The driver is free to drive away once the emergency or police vehicle passes "except when otherwise directed by a peace officer." Thus, the driver is not seized unless he or she is directed by a peace officer not to leave.

The typical way that a peace officer does that is by stopping his vehicle behind the stopped vehicle while leaving the patrol car's overhead lights operating. In this case, the state trooper did not stop behind the Toyota pickup, even though there was ample room behind it in the turnout to do so. The trooper passed it and drove to a point directly behind the Subaru, stopping as close to it as he could. When the trooper stopped, the rear of his vehicle was three to five car lengths from the front of the Toyota. At that point, he had done nothing that would indicate that the driver of the Toyota was not free to leave. In fact, by passing the Toyota he indicated the opposite—that the driver was free to leave. When the trooper stopped behind the Subaru, his vehicle was in no way impeding the driver of the Toyota from leaving.

After the trooper had stopped behind the Subaru, he got out of his patrol car and began walking back to the Toyota to tell the driver he was stopping the Subaru and the driver of the

5

Toyota was free to go. The district court held that the trooper's act of walking toward the Toyota constituted a seizure of the occupants of the Toyota because it indicated that they were not free to leave.

When reviewing a trial court's ruling on a motion to suppress, this Court will not disturb the trial court's findings of fact if they are based upon substantial and competent, even though conflicting, evidence, but we freely review the application of the law to those factual findings. *State v. Elison*, 135 Idaho 546, 549, 21 P.3d 483, 486 (2001). "[T]he police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)); *accord State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009) ("A seizure initiated through a show of authority requires words or actions, or both, by a law enforcement officer that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement."). "[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968). Whether or not the trooper's action would constitute a seizure under the Constitution is an objective test that presupposes an innocent person. *United States. v. Drayton*, 536 U.S. 194, 202 (2002).

The trooper's actions in walking toward the Toyota certainly indicated that he wanted to talk to the driver. In addition, the average person may not have felt comfortable just driving away at that point, knowing that the officer wanted to say something. However, that does not constitute a seizure under either the Idaho or the United States Constitution. A law enforcement officer does not seize a person merely by approaching the person in a public place and asking the person if he or she would answer some questions. *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion). "Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Id*. Likewise, in *Michigan v. Chesternut*, 486 U.S. 567 (1988), the respondent began to run upon seeing a marked police cruiser with four officers inside, and the cruiser followed respondent, quickly catching up to him and driving alongside him as he ran. While he was running, respondent discarded packets from his pocket that contained a controlled substance,

6

which the police retrieved. The Supreme Court held, "Without more, the police conduct here—a brief acceleration to catch up with respondent, followed by a short drive alongside him—was not 'so intimidating' that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business." *Id*. at 576.

When approaching the Toyota, the trooper did not draw his gun or make any hand gestures indicating that the Toyota should not leave, nor did he even shine his flashlight at the Toyota. Considering the totality of the circumstances in this case, the trooper did not seize the Toyota by walking up to the driver's door. His actions certainly indicated that he wanted to talk to the driver, but that does not constitute a seizure.

### III.

### Conclusion.

The order suppressing evidence is reversed and the judgment of dismissal is vacated.

Chief Justice BURDICK, Justices J. JONES and HORTON **CONCUR.**

W. JONES, dissenting:

I respectfully dissent from the majority Opinion in this case because the majority did not properly consider the totality of the circumstances in determining whether Trooper Jayne's actions constituted an unlawful seizure. The facts are as follows: on March 17, 2009, Idaho State Police Trooper Jeff Jayne was traveling down a two-way highway when he noticed a silver Subaru wagon pass him with only one working headlight.[1] A Toyota pickup truck was traveling immediately behind the Subaru. The Respondent, Irvin C. Ray, was a passenger in the Toyota pickup.[2] Trooper Jayne made a U-turn with the purpose of effectuating a traffic stop of the Subaru. Because the stretch of Highway 200 approaching Clark Road is very narrow, Trooper Jayne was unable to pull in directly behind the Subaru. Instead, Trooper Jayne followed both

---

[1] Trooper Jayne testified that he noticed the Subaru because it was missing a front license plate, yet the video recording of the encounter shows that Trooper Jayne only mentioned the headlight concern to the driver following the traffic stop.

[2] Although Ray was a passenger in the Toyota on the night of the arrest, he is the owner of the vehicle and his son was driving the truck that evening.

cars and then activated his overhead lights before approaching a turnout. When Trooper Jayne activated his lights, he was directly behind Ray's pickup. Both the Subaru and the pickup pulled off the highway and into the turnout. Trooper Jayne positioned his police vehicle directly behind the Subaru and approximately three to five car lengths in front of Ray's pickup. Trooper Jayne testified that he only intended to stop the Subaru and assumed that the pickup would drive away after the officer pulled in behind the lead vehicle. When the pickup made no attempt to leave, Trooper Jayne decided to explain to the occupants of the Toyota that they were free to leave.

Within seconds after Trooper Jayne parked between the two vehicles, he got out of his patrol car and began walking toward Ray's pickup.[3] The overhead lights of Trooper Jayne's patrol car were still activated when the officer approached Ray's pickup. As the officer walked to the driver's side window of the pickup, he greeted the occupants "hello" and noticed a strong smell of fresh marijuana emanating from the vehicle. Trooper Jayne searched Ray and found a marijuana pipe, rolling papers, and a small baggie of marijuana inside Ray's pockets. The officer then searched the vehicle and found a backpack containing 8.2 ounces of marijuana.

Ray filed a motion to suppress the evidence against him in both cases, arguing that it was the fruit of an unlawful detention. The district court granted Ray's Motion to Suppress, finding that although Trooper Jayne passed Ray's pickup, the officer's act of walking back to the pickup constituted a sufficient show of authority that a reasonable person would not feel free to leave. Therefore, the district court concluded that Trooper Jayne's conduct created an unlawful seizure requiring the suppression of evidence and ordered the dismissal of both cases against Ray. The Court of Appeals ultimately affirmed the district court's Order granting Ray's Motion to Suppress, holding that the officer's act of walking toward the pickup invoked the "except when otherwise directed" language of Idaho Code section 49-625(1), making a reasonable person feel that he or she was not free to leave. On appeal to this Court, the majority reverses the district court's Order suppressing the evidence, holding that Ray was not seized when Trooper Jayne approached Ray's vehicle.

For purposes of the Fourth Amendment, a seizure only occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Nickel*, 134 Idaho 610, 612, 7 P.3d 219, 221 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1,

---

[3] The district court determined that "from the time you hear the door click open to the time that the officer says hello to the driver of the pickup truck, there's about 16 seconds that elapses."

19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968)). "A seizure initiated through a show of authority requires words or actions, or both, by a law enforcement officer that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement." *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009) (internal citations omitted). "The test to determine if an individual is seized for Fourth Amendment purposes is an objective one, evaluating whether under the totality of the circumstances 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 436, 111 S. Ct. 2382, 2387 (1991)). Thus, an officer's subjective intent is only relevant if that intent has been objectively conveyed to the person in question. *Brendlin v. California*, 551 U.S. 249, 260–61, 127 S. Ct. 2400, 2408–09 (2007).

Idaho Code section 49-625(1) mandates that drivers yield in response to an officer's activation of its vehicle's overhead lights and provides as follows:

> Upon the immediate approach of an authorized emergency or police vehicle making use of an audible or visible signal, meeting the requirements of section 49-623, Idaho Code, the driver of every other vehicle shall yield the right-of-way and immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the highway lawful for parking and clear of any intersection, and **stop and remain in that position until the authorized emergency or police vehicle has passed, except *when otherwise directed* by a peace officer**.

(Bold and italics emphasis added).

This Court has previously held that although an officer's activation of its overhead lights does not create a *de facto* seizure implicating the Fourth Amendment, the use of emergency lights is a significant factor for the court to consider under the totality of the circumstances. *Willoughby*, 147 Idaho at 487, 211 P.3d at 96. Here, Trooper Jayne activated his emergency lights while he was driving directly behind Ray's pickup and Ray responded by pulling off of the highway. At that moment, Ray was acting in compliance with the law. In accordance with Idaho Code section 49-625(1), Ray was obligated by law to remain stopped until Trooper Jayne passed Ray's vehicle "except when otherwise directed." *See* I.C. § 49-625(1). I agree with the majority that a driver who pulls over and stops as required by Idaho Code section 49-625(1) "is not seized unless he or she is directed by a peace officer not to leave." However, I disagree with the majority's conclusion that Trooper Jayne's act of walking towards Ray's pickup did not

9

constitute a show of authority that implicated the "except when otherwise directed" language of the statue, especially when considering the totality of the circumstances.

Although police officers typically pull in behind the lead vehicle which they were pursuing, once they step out of the patrol car, the emergency overhead lights usually remain flashing and the officers approach the vehicle without any hand gestures, or weapons drawn. The manner in which Trooper Jayne caused Ray's vehicle to pull-over (by activating his overhead lights while driving directly behind Ray's pickup) is typical of how a suspicious driver is pulled over for further investigation. Likewise, the manner in which Trooper Jayne approached Ray's vehicle is typical of how an officer would approach a vehicle that was stopped with reasonable suspicion of criminal activity. The only indication that Ray was not the subject of the stop was that Trooper Jayne parked his vehicle in front of Ray's pickup and behind the Subaru. But again, when looking at the totality of the circumstances, this scenario is riddled with ambiguity because two cars pulled into the turn-out. At that moment, a reasonable person would have felt unsure about which vehicle was the target of the stop. But as soon as Trooper Jayne got out of his car and immediately began walking towards Ray's vehicle, he confirmed, at least to a reasonable person, that the officer wanted Ray to remain stopped.

Even the majority acknowledged that Trooper Jayne's act of walking toward Ray's vehicle "certainly indicated that he wanted to talk to the driver." The majority went on to admit that "the average person may not have felt comfortable just driving away at that point, knowing that the officer wanted to say something." Despite acknowledging that a reasonable person would not be comfortable driving away after being pulled over and then having the officer approach the vehicle, somehow the majority reached the conclusion that Ray knew or should have known that he was free to accelerate and leave and that he was not seized when Trooper Jayne approached his pickup. In other words, the majority admitted that an average person in these circumstances would not have felt comfortable to just drive away, but also concluded that a reasonable person would have felt free to leave, despite being approached by the same trooper that just activated his lights behind the driver causing him or her to pull over just moments earlier. In my opinion, the majority's logic is flawed, especially when considering the totality of the circumstances. For instance, Ray's vehicle was pulled over late at night and when Trooper Jayne emerged from his patrol car, with its emergency lights still flashing, he was wearing his Idaho State Trooper uniform, which included a badge and a gun. All of these factors contributed

10

to Trooper Jayne's show of authority when he began walking towards Ray's pickup. It is in that precise moment that Ray was unlawfully seized because his freedom of movement was restricted by the officer's conduct and show of authority. Such a restriction of liberty was not supported by reasonable suspicion.

For the majority to conclude that a reasonable person would have felt free to drive away as soon as the officer was stepping out of his patrol car and turning towards the vehicle, simply because the officer's patrol car had passed the vehicle, would be unfathomable and inconsistent with constitutional principles. In fact, had Ray not waited and just sped off as soon as Trooper Jayne passed Ray's vehicle to park in front of him, that kind of behavior would raise reasonable suspicion and it is highly likely that Trooper Jayne would have responded by chasing after Ray for resisting or obstructing a public officer in violation of Idaho Code section 18-705.[4] When a reasonable person is unsure about why he was pulled over or whether he, or another car, was the subject of the stop, a reasonable person would wait for further clarification from the officer. That clarification came in the form of Trooper Jayne stepping out of his patrol car and walking towards Ray's vehicle. Once Trooper Jayne began walking toward Ray, the trooper conveyed a sufficient show of authority causing a reasonable person to believe that he or she was the target of the trooper's stop and therefore causing the individual to feel that he or she was not free to leave.

I recognize that an officer has the right to approach individuals and ask them questions without implicating their Fourth Amendment rights to be free from unreasonable search and seizures.

> A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking him questions, or by putting questions to him if he is willing to listen. . . . Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. Thus, where an officer merely approaches a person who is standing on the street, or seated in a non-moving vehicle located in a public place, and poses a few questions, no seizure has occurred. . . .[T]he critical inquiry is whether, taking into account all of the circumstances

---

[4] Idaho Code section 18-705 states:
> Every person who wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

surrounding the encounter, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."

*State v. Osborne*, 121 Idaho 520, 523–24, 826 P.2d 481, 484–84 (Ct. App. 1991) (internal citations omitted).

I agree with the majority that, under some circumstances, an officer is free to approach a person on the street or parked in a car to ask him or her questions. Yet the facts presented in this case cannot be compared to the situation where a police officer approaches an individual in daylight and in a public place, and the individual has no prior indication that the officer wants to talk to him or her until the officer speaks directly to the person. Even in uniform, an officer merely approaching an individual does not constitute a sufficient show of authority to convey to a reasonable person that he or she is not free to leave. This seems to be where the majority rests its reasoning, but in my opinion, the majority is ignoring the totality of the circumstances by not taking into account the factors that led up to the trooper approaching Ray's vehicle. When considering the totality of the circumstances surrounding Trooper Jayne's advance toward Ray, I remain firmly convinced that the trooper's conduct would have conveyed to a reasonable person that he or she was not free to ignore the trooper's presence and simply drive away as the officer was approaching. These circumstances, which fundamentally changed the dynamic of Trooper Jayne's approach, include the fact that Trooper Jayne activated his lights when he was directly behind Ray, causing him to pull over, and the close temporal proximity between Ray yielding to the officer's emergency lights and Trooper Jayne stepping out of his car to approach Ray's vehicle. After considering the totality of the events leading up to Trooper Jayne walking toward Ray's vehicle, I am convinced that a reasonable person would believe that his freedom to move was restrained or restricted. In fact, during oral argument on appeal to this Court, counsel for the State even admitted that she would not have felt comfortable to leave while the officer was approaching her vehicle given the chain of events in this case. Although the trooper passed Ray, Trooper Jayne "otherwise directed" Ray to remain stopped when he began walking towards Ray's pickup.

Trooper Jayne could have easily waved, from his patrol car, the occupants of Ray's vehicle to move along. There was no need to approach Ray's vehicle, at least unless they ignored his hand signal to move along and remained in the turn-out. Trooper Jayne admitted that he had no probable cause or reasonable suspicion of criminal activity to stop Ray's pickup. At

12

the suppression hearing, Trooper Jayne explained that Ray was free to leave before he got to the vehicle, "[b]ut as soon as I got that odor of marijuana they were not free to leave." Although the officer testified about how probable cause developed as he was walking up to Ray's pickup, Trooper Jayne does not indicate at what point he smelled the marijuana or that his body language or conduct changed in any way as a result. For instance, once Trooper Jayne detected the smell of marijuana, he did not suddenly raise his hand or tell the occupants to "stop." Instead, he just continued walking, objectively manifesting the exact same behavior as he was exhibiting when Ray was supposedly free to leave. This supports my conclusion that Trooper Jayne's subjective intent was not objectively conveyed by his outward conduct. After yielding to an officer's emergency lights, which were activated behind the driver, and seeing that officer approach the vehicle without making any hand gestures to move along, a reasonable person would not believe that they were free to drive away and leave when a police officer is approaching their vehicle, and that is the test to determine whether an unlawful seizure occurred. Therefore, I agree with the district court judge and the court of appeals, and I would affirm the district court's suppression order, holding that the evidence was the fruit of an unlawful seizure.

13