# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47914

STATE OF IDAHO,                           )
                                          )
   Plaintiff-Respondent,                  )        Boise, May 2021 Term
                                          )
v.                                        )        Filed: August 31, 2021
                                          )
KELVIN SAUL ALVARENGA-LOPEZ,              )        Melanie Gagnepain, Clerk
                                          )
   Defendant-Appellant.                   )
_____   )

Appeal from the District Court of the First Judicial District of the State of
Idaho, Kootenai County. John T. Mitchell, District Judge.

The decision of the district court is <u>affirmed</u>.

Eric Fredericksen, Idaho State Appellate Public Defender, Boise, attorneys
for Appellant. Kimberly Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorneys for Respondent.
John McKinney argued.

_____

BEVAN, Chief Justice.

Kelvin Alvarenga-Lopez appeals from a district court's denial of his motion to suppress. Alvarenga-Lopez argues that he was unlawfully seized when an officer began questioning him at his car window. Thus, he asserts that the evidence obtained during a subsequent search of the vehicle should have been suppressed as fruit of the unlawful seizure. The district court denied Alvarenga-Lopez's motion to suppress after concluding the initial encounter was consensual. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officer Eric Boardman testified to the following facts during Alvarenga-Lopez's motion to suppress hearing. Officer Boardman was in his patrol car at 1:00 a.m. when he observed a white Toyota Celica driving from the opposite direction make a turn. Because there was little traffic at that hour, Officer Boardman decided to conduct a "registration query," through which he learned

that the Celica's registered owner was on probation. Officer Boardman turned around and followed the Celica as it made two more turns then pulled over in front of a house. Officer Boardman circled back around the block and drove his patrol car up alongside the Celica. Officer Boardman observed that the driver's side window was down, and as he pulled alongside the Celica, a male was in the driver's seat leaned back as if to obscure the officer's view into the car or prevent the officer from seeing him. After backing up approximately thirty feet, Officer Boardman parked his patrol car behind the Celica and walked up to the driver's side door. Officer Boardman was in a marked patrol vehicle and wearing a police uniform. Officer Boardman did not activate his emergency lights or siren. The Celica was parked mid-block and there was no overhead lighting on the street.

Officer Boardman approached the driver's side of the Celica with a flashlight and asked the driver—Alvarenga-Lopez—what he was doing in the area and where he was coming from. Alvarenga-Lopez initially responded he was coming from Texas Roadhouse, but later admitted that he was coming from a co-worker's house. Officer Boardman explained he believed the circumstances were suspicious and he "wanted to dispel that suspicion." The house Alvarenga-Lopez parked in front of had a real estate sign and appeared to be empty. In addition, the registration query Officer Boardman conducted showed "there was no residence associated with that vehicle, [and] that the return didn't come back to that location or anywhere near it." Officer Boardman also described the circuitous route Alvarenga-Lopez took before parking as suspicious.

Officer Boardman did not make any commands to Alvarenga-Lopez during this initial encounter. A little over a minute into the initial conversation, Alvarenga-Lopez stated he did not possess a driver's license. Alvarenga-Lopez identified himself by producing an expired El Salvadoran resident card in the name of Kelvin Alvarenga-Lopez. Officer Boardman asked Alvarenga-Lopez whether he had been drinking that evening. Initially Alvarenga-Lopez stated he had not, but he later admitted he had. Officer Boardman later learned that Alvarenga-Lopez was not twenty-one years old.

Officer Boardman took Alvarenga-Lopez's identification card back to his patrol vehicle to conduct queries. Around this time, Officer Joshua Reneau arrived on the scene. Officer Reneau was wearing his police uniform and arrived in a marked patrol car but he did not activate the lights or siren of his car.

After conducting queries, Officer Boardman returned to talk to Alvarenga-Lopez and he verbally consented to a search of the vehicle. When Alvarenga-Lopez stepped out of the vehicle,

Officer Boardman asked for consent to search his person, namely the contents of his pockets. Officer Boardman did not find anything relevant during the search. However, while the search was occurring, Officer Boardman asked if there was anything he needed to be aware of inside the vehicle. Alvarenga-Lopez responded that there was crystal meth in the center console. Officer Boardman had Alvarenga-Lopez stand by Officer Reneau at the front of his patrol car while he searched the Celica. When Officer Boardman searched the center console he found a piece of clear cellophane with white crystalline substance he recognized as consistent with methamphetamine. Officer Boardman then arrested Alvarenga-Lopez.

The State charged Alvarenga-Lopez with possession of methamphetamine and possession of drug paraphernalia. Alvarenga-Lopez filed a motion to suppress all the evidence on the ground that he was unlawfully seized in violation of his Fourth Amendment rights.[1] Alvarenga-Lopez argued that he was seized as soon as Officer Boardman approached the vehicle and began questioning him. The State rejoined that the encounter was consensual. The district court ruled from the bench and denied Alvarenga-Lopez's motion to suppress with the exception of a statement Alvarenga-Lopez made to Officer Boardman.[2] First, the court identified some factors that would point toward a finding of custody: "the fact that it's late at night, no overhead lighting, a marked car, officer in uniform, the fact that he backed up and then got out with a flashlight." However, the court concluded, "those collectively don't amount to a reasonable person thinking that he or she was in custody at that time." The court went on to hold:

> It's a legal stop. The officer ran the plates and knew that this was a car that belonged to a person that's on probation, so there's – and it's late at night. Most probationers aren't allowed to be out at this time of night.[3] The officer had every reason to follow this vehicle, and then, in doing so, found some inconsistent behavior.

---

[1] Alvarenga-Lopez also sought suppression based on the involuntariness of his statements and consent, and the improper timing of the *Miranda* warnings. However, Alvarenga-Lopez is not pursuing those claims on appeal.

[2] The district court ruled in part, "I do find the statement that – the question, 'How do you use the meth?', that's interrogation. It may well be for the officer's safety, but it's still interrogation, so that question will not be allowed at trial, and the defendant's answer that he ingested it orally or ate it, that's not coming in, but that's the only dialogue that's suppressed so to that limited effect, it is suppressed."

[3] Alvarenga-Lopez asserts that the district court's finding that "most probationers aren't allowed to be out at this time of night" is not supported by evidence in the record. He is correct. Factual findings that are not supported by substantial and competent evidence are clearly erroneous. *State v. Henage*, 143 Idaho 655, 659, 152 P.3d 16, 20 (2007). Because clearly erroneous findings will be set aside, and will not be used to support the trial court's decision, the district court's finding cannot be used to support its decision. *Stuart v. State*, 127 Idaho 806, 814, 907 P.2d 783, 791 (1995). The

3

. . .

> [N]othing's making sense as far as the route or anything like that, so the officer has reason to investigate. Whether this is a stolen vehicle, whether this is the legitimate owner out after probation, the stop is fine.

Ultimately, the district court found the encounter to be "extremely professional, extremely calm" and held Officer Boardman had a right to inquire, so the initial encounter was consensual. The case proceeded to a jury trial and Alvarenga-Lopez was found guilty. The district court granted Alvarenga-Lopez a withheld judgment and placed him on probation for a year. Alvarenga-Lopez filed a timely notice of appeal.

## II. ISSUE ON APPEAL

**1.**      Whether the district court erred in denying Alvarenga-Lopez's motion to suppress.

## III. STANDARD OF REVIEW

"When this Court reviews a district court's order granting or denying a motion to suppress, the standard of review is bifurcated." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). Even so, "this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id.* (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)).

## IV. ANALYSIS

**A.      The initial encounter between Officer Boardman and Alvarenga-Lopez was consensual.**

Alvarenga-Lopez argues the district erred in denying his motion to suppress because Officer Boardman seized him without reasonable suspicion, in violation of the Fourth Amendment, when he began questioning him at the car. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend IV. The United States Supreme Court has held that even a brief stop may be considered a seizure for Fourth Amendment purposes. *State v. Godwin*, 121 Idaho 491, 493, 826 P.2d 452, 454 (1992). This Court has held that

---

State does not challenge Alvarenga-Lopez's assertion that the finding was not supported by evidence in the record and we do not rely on the district court's finding in that regard in reaching our decision.

4

"[a] seizure under the meaning of the Fourth Amendment occurs only 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004) (quoting *State v. Nickel*, 134 Idaho 610, 612–13, 7 P.3d 219, 221–22 (2000)).

"When a defendant seeks to suppress evidence allegedly obtained as a result of an illegal seizure, the burden of proving that a seizure occurred is on the defendant." *Id*. (quoting *State v. Reese*, 132 Idaho 652, 654, 978 P.2d 212, 214 (1999)). "Therefore, the proper inquiry in determining whether a seizure occurred is whether, under all the circumstances surrounding an encounter, a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter." *Id*. (internal citation omitted). This rule has been otherwise stated as " '[s]o long as a reasonable person would feel free to disregard the police and go about his business,' an encounter between police and an individual is consensual." *Id*. at 843–44, 103 P.3d at 456–57 (quoting *Nickel*, 134 Idaho at 613, 7 P.3d at 222). "An encounter between a law enforcement officer and a citizen does not trigger Fourth Amendment scrutiny unless it is nonconsensual." *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009) (citing *State v. Baker*, 141 Idaho 163, 165, 107 P.3d 1214, 1216 (2004)).

Alvarenga-Lopez argues the district court erred in concluding the initial encounter between him and Officer Boardman was not unlawful under the Fourth Amendment. Alvarenga-Lopez argues he was seized when Officer Boardman approached his vehicle and began questioning him, before he stated that he did not have a driver's license. The State counters that the district court properly held that Alvarenga-Lopez's encounter with Officer Boardman was consensual.

Alvarenga-Lopez cites to the following facts in support of his claim that a seizure occurred when Officer Boardman approached his vehicle. Officer Boardman had to initially turn his patrol car around to begin following the Celica Alvarenga-Lopez was driving. It was 1:00 a.m. and there was little traffic in the area. Officer Boardman followed Alvarenga-Lopez as he turned twice, until he pulled over and stopped. Officer Boardman then pulled up next to the Celica, looked in the driver's side window, and observed Alvarega-Lopez attempting to avoid being seen by reclining his seat. Officer Boardman circled the block, pulled up behind the Celica, backed up approximately thirty feet, and then approached the Celica on foot to question Alvarenga-Lopez. Officer Boardman was in a marked patrol vehicle and wearing a police uniform, but did not activate his overhead

5

lights. Officer Boardman directed his flashlight beam directly into Mr. Alvarenga-Lopez's face and lap and the following exchange took place:

Kelvin Alvarenga-Lopez [KA]: I just got off of work.[4]

Officer Boardman [OB]: What do you do?

KA: What do you mean?

OB: You do – where do you work?

KA: Texas Roadhouse.

OB: Texas Roadhouse is way up there man.

KA: I know. I went uh I went to my coworkers who lives 10 minutes away.

OB: Where at.

KA. . . .

OB: Let's start over man. You saw a cop car and you're probably not supposed to be out this late right?

KA: I just got off at like 11, 12.

OB: Okay, I gotcha man. Is this your car?

KA: No. It's Chris Olsen's car.

OB: Okay. Why do you have Chris Olsen's car?

KA: Uh. I don't uh I don't possess any ID. I'm from El Salvador.

OB: [unintelligible] You said you're from El Salvador? And you got nothing with your name on it huh? You understand why I think this would be a little bit suspicious right? Because I got in here behind you, you pulled up in front of a house that has a for sale sign and you parked, it seems pretty obvious to me that you were trying to just avoid law enforcement you know what I mean?

KA: I don't possess a driver's license.

The district court recognized that some of the facts highlighted by Alvarenga-Lopez point to a finding of custody: "the fact that it's late at night, no overhead lighting, a marked car, officer in uniform, the fact that he backed up and then got out with a flashlight." However, the court concluded, "those collectively don't amount to a reasonable person thinking that he or she was in custody at that time." Instead, the court identified several factors that favored a finding that Officer Boardman had a consensual encounter with Alvarenga-Lopez, including that the encounter was

---

[4] There is no video footage of Officer Boardman's approach to the vehicle or the initial exchange between Officer Boardman and Alvarenga-Lopez. Officer Boardman admitted he was likely delayed in getting his body camera turned on.

"extremely professional, extremely calm," the car window was already down, and the fact that Alvarenga-Lopez handed Officer Boardman his identification without being asked for it.

In addition to the factors identified by the district court, the State argues that none of the circumstances that generally accompany a seizure were present in this case. Examples of circumstances that might indicate a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Pieper*, 163 Idaho 732, 734, 418 P.3d 1241, 1243 (Ct. App. 2018) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The use of overhead lights on a police vehicle is also a "significant factor" that may indicate a seizure. *State v. Willoughby*, 147 Idaho 482, 487, 211 P.3d 91, 96 (2009). Similarly, law enforcement officers positioning themselves or their vehicles to prevent a person from leaving is indicative of a seizure. *Id.* at 488, 211 P.3d at 97; *see also State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991).

Here, Officer Boardman did not use his patrol car emergency lights or siren. Officer Boardman did not draw any weapons. Officer Boardman did not make any commands of Alvarenga-Lopez during the initial encounter. Officer Boardman had the initial contact and discussion with Alvarenga-Lopez alone, before Officer Reneau arrived on the scene. In addition, Officer Boardman did not physically put his hands on Alvarenga-Lopez, apart from searching Alvarenga-Lopez's pockets, which occurred after Alvarenga-Lopez offered that he did not have a driver's license and was done with Alvarenga-Lopez's consent. The State also argues that Officer Boardman's use of the flashlight was not problematic. This Court has held the use of lights to illuminate an area does not necessarily constitute a seizure of people in the illuminated area. *State v. Baker*, 141 Idaho 163, 165, 107 P.3d 1214, 1216 (2004). The video of Officer Boardman's body camera shows that the flashlight was used to illuminate the dark area, not to direct Alvarenga-Lopez's movements or make any commands.

Ultimately, our precedent dictates that no seizure has occurred when an officer simply approaches an individual on the street or other public place, by asking him if he is willing to answer some questions, or by putting questions to him if he is willing to listen. *Page*, 140 Idaho at 844, 103 P.3d at 457 (citing *Florida v. Bostick*, 501 U.S. 429 (1991)); *see also State v. Ray*, 153 Idaho 564, 568, 286 P.3d 1114, 1118 (2012) ("A law enforcement officer does not seize a person merely by approaching the person in a public place and asking the person if he or she would answer some

questions."). After Alvarenga-Lopez pulled over and parked the Celica on his own accord, Officer Boardman could lawfully approach him and ask questions without a seizure occurring. Thus, we agree with the district court's holding that the initial encounter was consensual and affirm the denial of Alvarenga-Lopez's motion to suppress.

## V. CONCLUSION

We affirm the district court's denial of Alvarenga-Lopez's motion to suppress because the initial encounter between Officer Boardman and Alvarenga-Lopez was consensual.

Justices MOELLER and BURDICK, CONCUR.

STEGNER, J., dissenting.

I respectfully dissent. I do not agree with the majority that the initial encounter was consensual. In my view, a reasonable person would not have felt free to leave given the circumstances in which the officer made his initial contact with Alvarenga-Lopez. There was a sufficient show of authority to effect a seizure, and Alvarenga-Lopez's ability to leave was significantly constrained.

The touchstone of whether a seizure has occurred is whether, under the totality of the circumstances, a reasonable person would have felt free to leave. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991); *see also State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009) (citing *State v. Maland*, 140 Idaho 817, 820, 103 P.3d 430, 433 (2004)) ("A seizure initiated through a show of authority requires words or actions, or both, by a law enforcement officer that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement."). Although an officer is not required to inform a person that he or she is free to go, failure to do so is a factor to be considered in whether a seizure has occurred. *See Ohio v. Robinette*, 519 U.S. 33, 39–40 (1996); *see also State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006).

In this case, the scene is set: it is one o'clock in the morning. It is dark. An on-duty police officer is driving a marked car when he spots Alvarenga-Lopez driving a friend's Celica. The officer makes a U-turn to follow the Celica, and then trails Alvarenga-Lopez for a short time. When Alvarenga-Lopez stops in a residential neighborhood, the officer drives up alongside the vehicle, looks inside, and then circles the block. The officer again drives up parallel to the Celica, looking inside a second time—this is no once-over—before backing up and parking behind the

8

car. Subsequently, the officer approaches Alvarenga-Lopez on the driver's side with a flashlight, shining it into the vehicle and at him. Although the first moments of this encounter are not caught on the body camera, the officer purportedly questions Alvarenga-Lopez about his presence, where he is coming from, and where he is going. Then, as caught on the body camera, when the officer is dissatisfied with Alvarenga-Lopez's responses, he demands that they "start over" and reiterates his questions. At no time does the officer indicate to Alvarenga-Lopez that he is free to go.

In my view, these are sufficient factors to establish that a reasonable person would not have felt free to leave from the initial contact. From the moment the officer stepped up to the driver's side window, Alvarenga-Lopez could not exit the Celica because the officer was blocking the driver's door. Nor could he have driven away because the officer was so close to his vehicle. Anyone remotely acquainted with policing in America knows Alvarenga-Lopez was not free to leave at this juncture. The officer's "show of authority" was unmistakable—he twice pulled his marked car parallel to the Celica and looked inside. The officer was in uniform and ultimately backed his police cruiser behind the Celica, a maneuver emblematic of the initiation of a traffic stop. Finally, from the recorded conversation it is clear Alvarenga-Lopez was not free to disregard the officer. The officer's initial set of questions indicated to Alvarenga-Lopez that he was required to justify his own presence, and that dissatisfactory answers would not suffice.

Ultimately, a reasonable person under these circumstances would not feel free to leave. Alvarenga-Lopez was seized when the officer stepped up to his window. I would further hold that this seizure was not supported by reasonable suspicion, as the officer himself conceded that at the point of initial contact, there was no particularized suspicion. Accordingly, I respectfully dissent.

Justice BRODY CONCURS.