# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48367

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: January 20, 2022 |
| Plaintiff-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| DACE S. HUSTON, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem County. Hon. D. Duff McKee, District Judge; Hon. Tyler D. Smith, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, reversing order denying motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for appellant. Andrew V. Wake argued.

Mark P. Coonts, Gem County Public Defender, Emmett, for respondent.

---

BRAILSFORD, Judge

The State appeals the district court's decision on intermediate appeal reversing the magistrate court's denial of Dace S. Huston's motion to suppress. We reverse the district court's order and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a suppression hearing, the magistrate court issued a written decision finding the following facts, which neither party challenges on appeal:

> On February 7, 2019, at approximately 1:20 am, Lieutenant McIntosh was on general patrol near Cobblestone Park when he observed another vehicle heading northbound on Plaza Road. With the intention of getting behind the vehicle McIntosh waited for the vehicle to pass him. McIntosh observed the vehicle's headlights disappearing behind a berm where Plaza Road crosses the Payette River and the lights did not reappear. This led McIntosh to investigate

1

what had happened to the vehicle because there are no homes or intersecting roads in that location.

McIntosh located the vehicle, a white pickup, parked in a pull-off area with its headlights still on. He observed the driver, later identified as Dace Huston, standing between the vehicle and the driver's door. McIntosh parked approximately fifty feet behind the vehicle, turned on his overhead lights, and walked over to the pickup. McIntosh informed the driver that the lights had been turned on for safety and he was free to leave at any time. McIntosh's body cam was activated during [sic] and captured him telling Huston he was free to leave. He then asked Huston what was going on, Huston responded, "he just got done taking a piss." McIntosh asked if he could see Huston's license. Huston handed over his license.

While McIntosh was speaking with Huston he could smell alcohol coming from Huston's person. Huston's license informed McIntosh that he was under the age of twenty-one. Huston admitted to having one beer. McIntosh informed Huston he did not intend to arrest him for underage consumption of alcohol but wanted to determine whether or not he was too intoxicated to drive safely. A field sobriety test was administered. Huston failed three tests and was placed under arrest for suspicion of Driving Under the Influence (DUI). A blood test confirmed a blood alcohol content (BAC) of .094 g/l00cc blood.

As a result of this encounter, the State charged Huston with operating a motor vehicle while under the influence, second offense within ten years, Idaho Code §§ 18-8004, 18-8005(4). Huston filed a motion to suppress all of the evidence obtained, arguing he was unlawfully seized. In response, the State asserted the encounter was consensual or justified by the community-caretaking function.

At a suppression hearing, Officer McIntosh testified, and the State admitted into evidence the video from his bodycam showing a portion of the encounter and photographs that he took of the scene in the daylight. During the hearing, Huston's counsel conceded that "once [Officer] McIntosh [detected] the presence of glassy and bloodshot eyes[1] or the odor of an alcoholic beverage," he had "reasonable articulable suspicion that a crime [was] afoot." Huston, however, argued that Officer McIntosh unlawfully seized Huston "immediately upon the activation of the [overhead] lights," although he acknowledged "the test does look at the totality of the circumstances."

_____

[1]    The magistrate court's decision did not mention Huston's glassy, bloodshot eyes. Officer McIntosh, however, testified that he noticed Huston's eyes were glassy and bloodshot "when [Officer McIntosh] was walking up." Huston does not dispute this fact. Rather, he expressly conceded at the suppression hearing that Office McIntosh had reasonable suspicion once he observed Huston's "glassy and bloodshot eyes."

After the hearing, the parties submitted supplemental briefing addressing whether Officer McIntosh's activation of his overhead lights constituted a seizure and whether the community-caretaking function justified his actions. Subsequently, the magistrate court issued a written decision denying Huston's suppression motion and concluding Officer McIntosh's initial encounter with Huston was consensual.

After the magistrate court denied Huston's suppression motion, he entered a conditional guilty plea and reserved his right to appeal the denial to the district court. After briefing but without a hearing, the district court issued a written decision and reversed the magistrate court's ruling. The district court noted the parties did not dispute the facts; ruled the magistrate court erred by concluding Officer McIntosh's encounter with Huston was consensual; and concluded that "Huston was 'seized' when [Officer McIntosh] activated his overhead lights." The district court reasoned:

> To this court's mind, there can be no other reasonable conclusion but that an ordinary person would believe when a marked[2] sheriff's car pulled in behind him and activated the overhead emergency lights, and the officer then approached him in full uniform, carrying a sidearm, that the driver was bound to remain right where he was until he was clearly released by the officer. This constituted a seizure by show of authority, which brings it under constitutional scrutiny.

The district court then analyzed whether the additional circumstances of Officer McIntosh informing Huston that "the lights were only activated for safety and [Huston] was free to go" "could undo the constitutional [sic] seizure." The court concluded these facts were insufficient "to remove the shroud of authority [and] lead [the encounter] to become a community caretaking function to which Huston consented." The court reasoned that Officer McIntosh turned on his overhead lights to protect himself, not Huston; Officer McIntosh did not "follow up on his explanation that Huston was free to go" by ensuring Huston "heard and understood" the explanation; and "Huston obeyed [Officer McIntosh's] requests, acting as he would have done during a custodial interrogation." The district court reversed the magistrate court's decision, vacated Huston's judgment, and remanded with direction to grant the suppression motion.

---

2       The district court's suggestion that Officer McIntosh was driving a "marked sheriff's car" is incorrect. The magistrate court never found that Officer McIntosh's patrol vehicle was "marked." Further, Officer McIntosh testified during the suppression hearing that his vehicle was not marked, stating "mine's an unmarked unit."

3

The State timely appeals the district court's order on intermediate appeal reversing the magistrate court's denial of Huston's suppression motion.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues the district court erred by reversing the magistrate court's ruling that Officer McIntosh's initial encounter with Huston was consensual. The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. Not all encounters between the police and citizens involve the seizure of a person, however. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100,

102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498.

A consensual encounter between a law enforcement officer and an individual does not trigger Fourth Amendment scrutiny. *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009). In determining whether a seizure has occurred, the proper inquiry is whether a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *State v. Alvarenga-Lopez*, 169 Idaho 215, 218, 494 P.3d 763, 766 (2021). Stated otherwise, so long as a reasonable person would feel free to disregard the police and go about his business, an encounter between the police and an individual is consensual. *Id.* A court must consider the totality of circumstances in determining whether a seizure has occurred. *Willoughby*, 147 Idaho at 487, 211 P.3d at 96. Examples of circumstances that may indicate a seizure include the threatening presence of several officers, an officer's display of a weapon, an officer's physical touching of the person, the officer's use of language or tone of voice compelling compliance with his request, the use of overhead lights on a police vehicle, and an officer positioning himself or his vehicle to prevent the person from leaving. *Alvarenga-Lopez*, 169 Idaho at 219-20, 494 P.3d at 767-68.

In this case, Huston has conceded Officer McIntosh had reasonable suspicion to detain Huston once Officer McIntosh observed "the presence of glassy and bloodshot eyes or the odor of an alcoholic beverage." As Officer McIntosh testified, his observation of Huston's glassy, bloodshot eyes occurred "within the first 20 seconds" of his contact with Huston.[3] Before this observation, the State contends McIntosh's encounter with Huston was consensual. In support, the State argues that "use of lights when parking near, but without blocking, an already-parked

---

[3]     Officer McIntosh testified at the suppression hearing that "within the first 20 seconds of [his] contact" with Huston, Officer McIntosh observed "[Huston's] eyes were bloodshot and glassy" and Officer McIntosh could smell the odor of alcohol "when [Huston] started speaking to [Officer McIntosh]."

5

vehicle" was not sufficient to detain Huston, particularly when Officer McIntosh told him he was free to leave and that the lights were only on for safety purposes.

In support, the State asserts *Willoughby*, 147 Idaho 482, 211 P.3d 91, is instructive. In that case, two police officers in separate, marked police cars with their overhead lights and sirens activated responded to a report of a physical fight. *Id.* at 484-85, 211 P.3d at 93-94. When they arrived at the scene, both officers left their overhead lights activated. *Id.* at 485, 211 P.3d at 94. The first officer parked "approximately fifteen feet from Willoughby's vehicle" and the second officer "parked his car somewhat behind and on the driver's side" of the first officer's car. *Id.* After Willoughby stepped out of his vehicle, the first officer made contact with Willoughby and "noticed the odor of alcohol and that Willoughby's eyes appeared glassy." *Id.* After further investigation, the officers arrested Willoughby for driving under the influence. *Id.*

The trial court granted Willoughby's suppression motion, and the Idaho Supreme Court affirmed. At issue was whether the officers' use of overhead emergency lights "in close proximity to a parked vehicle" constitutes a show of authority conveying to a reasonable person that the officer was ordering him to restrict his movement. *Id.* at 487, 211 P.3d at 96. The Court noted that "the use of overhead lights is a significant factor a court must consider when considering the totality of the circumstances." *Id.* Further, it noted that "few, if any reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for them to remain." *Id.*

Despite these comments, however, the *Willoughby* Court stated the appellate record did not allow it "to conduct a complete evaluation of the totality of circumstances." *Id.* Missing from the record were the diagrams the officers created while testifying at the suppression hearing. *Id.* at 487-88, 211 P.3d at 96-97. Absent these diagrams, the Court was unable to determine the parking lot's layout, the location and number of exits, where the officers parked in relation to Willoughby's vehicle, and whether their actions blocked Willoughby's exit route. *Id.* at 97, 211 P.3d at 488. Accordingly, the Court presumed this missing record supported the trial court's findings, concluded the officers' actions would have conveyed to a reasonable person they were ordering his movements restricted, and affirmed the suppression of evidence. *Id.*

Implicit in the *Willoughby* Court's decision that the officers had seized Willoughby is a presumption the officers had blocked Willoughby's exit. Based on this implicit presumption, the State argues *Willoughby* stands for the proposition that an officer's activation of his overhead

6

"lights alone was not sufficient to effect a detention"; a person's "ability to exit the parking lot [is] a significant factor in the totality of the circumstances analysis"; and *Willoughby* "strongly implies [the result] would have been different if the Court had evidence that Willoughby's vehicle was not blocked in any way." Accordingly, the State argues *Willoughby* supports its assertion that Officer McIntosh's use of his overhead lights did not constitute a seizure of Huston. In response, Huston argues "the district court correctly evaluated the totality of the circumstances."

Like the State, we do not construe *Willoughby* as establishing a bright-line rule that an officer's activation of his overhead lights alone constitutes a detention of a vehicle that is already parked. While concluding "the use of overhead lights is a significant factor," the *Willoughby* Court expressly stated "we do not hold that a law enforcement officer's action of turning on his vehicle's overhead lights creates a *de facto* seizure commanding the driver to remain stopped." *Id.* at 96, 211 P.3d at 487; *see also Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (noting Court has "consistently eschewed bright-line rules" to analyze Fourth Amendment issues). Rather, the touchstone of whether a seizure has occurred is whether under the totality of circumstances, a reasonable person would feel free to leave. *Willoughby*, 147 Idaho at 96, 211 P.3d at 487; *see also Florida v. Bostick*, 501 U.S. 429, 436-37 (noting analysis of whether reasonable person would feel free to leave is based on totality of circumstances). In this case, the district court failed to consider all of the facts surrounding Officer McIntosh's encounter with Huston for purposes of determining when a seizure occurred.

Based on the totality of the circumstances, the magistrate court correctly concluded that Officer McIntosh did not seize Huston before observing his glassy, bloodshot eyes, which Huston concedes established reasonable suspicion for a seizure. Those circumstances include that Officer McIntosh did not use his overhead lights to pull Huston over. Rather, Huston was already parked and outside of his truck when Officer McIntosh activated his overhead lights. Further, Officer McIntosh did not block Huston's exit. Rather, Officer McIntosh parked "about 50 feet away," giving Huston "plenty of room to leave." Additionally, when Officer McIntosh initially approached Huston, Officer McIntosh explained he was not detaining Huston. Specifically, Officer McIntosh told Huston that Officer McIntosh had activated his lights for safety purposes and that Huston was "free to go anytime [he] want[ed]."

When analyzing whether a seizure occurred, the district court failed to consider Officer McIntosh's statements explaining he activated his overhead lights for safety purposes and instructing Huston he was free to leave. Instead, the court only analyzed Officer McIntosh's statements in the context of whether they converted a purportedly unlawful seizure into a community-caretaking function activity or a consensual encounter. This analysis is flawed. Both Officer McIntosh's explanation that he activated his overhead lights for safety and his clear, unequivocal instruction that Huston was free to leave at any time are circumstances to be considered under the totality of the circumstances and both statements support the magistrate court's conclusion that no seizure occurred before reasonable suspicion developed. As Idaho appellate courts previously noted, "[n]o reasonable person who has been unequivocally told that he may go . . . would believe that he should disregard the statement merely because the patrol car's overhead lights are still flashing." *State v. Henage*, 143 Idaho 655, 659, 152 P.3d 16, 20 (2007) (quoting *State v. Roark*, 140 Idaho 868, 871, 103 P.3d 481, 484 (Ct. App. 2004)).

In an effort to discount Officer McIntosh's statements, Huston relies on the district court's conclusion that "there is no proof that Huston heard [Officer McIntosh] say [Huston] was free to go." Specifically, Huston argues on appeal that "there is no indication he heard he was free to leave" and that "his compliance" suggests he did not hear Officer McIntosh's statement. At oral argument, however, Huston acknowledged that he did not argue before the magistrate court that he did not hear Officer McIntosh's statements and that the magistrate court made no factual findings on this issue. As a result, whether Huston actually heard Officer McIntosh's statements is not an issue preserved for appeal. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992) (noting issues not raised below generally may not be considered for first time on appeal).

Considering the totality of circumstances, Officer McIntosh's initial encounter with Huston was consensual. While the use of overhead lights can be a "significant factor" indicating a seizure, other facts that might indicate a seizure were absent in this case. For example, Officer McIntosh was not accompanied by "the threatening presence of several officers" when he encountered Huston. *See Alvarenga-Lopez*, 169 Idaho at 219-20, 494 P.3d at 767-68 (identifying various factors which may indicate seizure). Officer McIntosh did not display a weapon, touch Huston's person, use language or a tone compelling compliance, position himself or his vehicle to prevent Huston from leaving, or use a flashlight. *See id.* Further, Officer McIntosh did not

8

park his vehicle in a manner "emblematic of the initiation of a traffic stop," block Huston's door, stand so close to Huston's truck that he could not leave, or ask Huston demanding questions. *See id.* at 221, 494 P.3d at 769 (Stegner, J., dissenting) (noting various factors). Accordingly, Officer McIntosh did not seize Huston before reasonable suspicion developed. Because we conclude Officer McIntosh's initial encounter with Huston was consensual, we need not address whether the encounter was justified under the community-caretaking function.

## IV.
## CONCLUSION

We hold that, under the totality of the circumstances, Officer McIntosh's initial encounter with Huston was consensual and that the district court erred by concluding Officer McIntosh seized Huston before reasonable suspicion developed. Accordingly, we reverse the district court's decision on intermediate appeal reversing the magistrate court's denial of Huston's suppression motion and remand for further proceedings.

Chief Judge LORELLO and Judge Pro Tem MELANSON **CONCUR**.