**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48739**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 15, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| SCOTT CHRISTOPHER BRUCK, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Peter G. Barton, District Judge.

Judgment of conviction for felony possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kolby K. Reddish, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Scott Christopher Bruck appeals from his judgment of conviction for felony possession of a controlled substance, Idaho Code § 37-2732(c). Specifically, Bruck challenges the district court's denial of his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, law enforcement responded to a report of a driver driving his vehicle through a chain barrier and spinning the vehicle in circles in the parking lot of a business in Meridian. The officers located the vehicle, which did not have a license plate, parked in a nearby strip mall and located Bruck, who matched the driver's description, behind a business in the mall. When officers commanded Bruck to stop, he attempted to enter the business instead. The

1

officers detained Bruck, placed him in handcuffs, and read him his *Miranda*[1] rights. For approximately an hour, four officers investigated claims of property damage while Officer Dixon stayed with Bruck. During this time, Bruck's handcuffs were removed, and Officer Ferranato administered field sobriety tests on Bruck but concluded he was not intoxicated.

After the field sobriety tests concluded, the officers did not tell Bruck he was free to leave. Instead, Sergeant Fiscus expressed his concerns that Bruck's vehicle was not legal to drive, stating to Bruck:

> [S]o . . . just a few more minutes, we're just going to check on a few things, here's the problem I have. When we--when and if we kick you loose, that car doesn't have plates on it, I don't know if you have insurance on it, so I . . . can't really let you drive it.

Bruck responded that he could get a ride and return later with a trailer for the vehicle. Approximately one minute after this exchange, an officer stated in Bruck's presence, "We're good," to which Bruck responded, "Thank you, sir." Sergeant Fiscus then asked Bruck to retrieve his belongings from the hood of a patrol vehicle. After retrieving his belongings, Bruck realized he was missing his cellphone and, for approximately twenty minutes, searched for his phone with the officers' assistance.

During this time, Bruck searched for his cellphone in his vehicle, walked around the side of the building alone to search for it, and returned to search his vehicle again while Officer Dixon held a flashlight for Bruck. After an unsuccessful search, Bruck sat sideways in the driver's seat of his vehicle with the door open. Officers Ferranato and Dixon stood nearby, and Officer Ferranato offered to give Bruck a ride and to call his father. Bruck declined Officer Ferranato's offer to give Bruck a ride. While Officer Ferranato stepped away to call Bruck's father, Officer Dixon continued to stand nearby Bruck and converse with him.

When Officer Ferranato returned, he again offered to give Bruck a ride. Bruck agreed, and Officer Ferranato explained that, to allow Bruck in the patrol vehicle, Officer Ferranato needed to search Bruck's person. Officer Ferranato inquired, "Are you okay if I search you?" In response, Bruck stood up and stated, "It's just medication, right?" and put his hands up. During the search, Officer Ferranato discovered methamphetamine and paraphernalia in Bruck's pocket and arrested him.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

As a result, the State charged Bruck with felony possession of a controlled substance and possession of paraphernalia. Bruck subsequently filed a motion to suppress the evidence obtained during the search, arguing that, after Officer Ferranato completed the field sobriety tests, the officers unlawfully detained Bruck and that his consent to search his person was invalid as a result. In response, the State asserted the officers' encounter with Bruck was consensual after the field sobriety tests concluded.[2] Relying on *State v. Page*, 140 Idaho 841, 103 P.3d 454 (2004), and *State v. Martinez*, 136 Idaho 436, 34 P.3d 1119 (Ct. App. 2001), the district court denied Bruck's motion. It ruled that "Bruck's interaction with Officers Dixon and Ferranato was consensual from the time [Bruck] was invited to retrieve his personal items from the police vehicle until the discovery of the illegal items."

After the denial of his motion to suppress, Bruck conditionally pled guilty to possession of a controlled substance and reserved his right to appeal the denial. Bruck timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Bruck challenges the district court's denial of his motion to suppress, arguing he was illegally seized when he consented to be searched, and thus his consent was invalid. The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches

---

[2] The State also argued the officers' encounter with Bruck after the field sobriety tests concluded was pursuant to the officers' community caretaking function. The district court rejected this argument, however, and the State does not challenge this ruling on appeal.

3

and seizures. Not all encounters between the police and citizens involve the seizure of a person, however. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498.

A consensual encounter between a law enforcement officer and an individual does not trigger Fourth Amendment scrutiny. *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009). In determining whether a seizure has occurred, the proper inquiry is whether a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *State v. Alvarenga-Lopez*, 169 Idaho 215, 218, 494 P.3d 763, 766 (2021). Stated otherwise, so long as a reasonable person would feel free to disregard the police and go about his business, an encounter between the police and an individual is consensual. *Id.* A court must consider the totality of circumstances in determining whether a seizure has occurred. *Willoughby*, 147 Idaho at 487, 211 P.3d at 96. Examples of circumstances that may indicate a seizure include the threatening presence of several officers, an officer's display of a weapon, an officer's physical touching of the person, the officer's use of language or tone of voice compelling compliance with his request, the use of overhead lights on a police vehicle, and an officer positioning himself or his vehicle to prevent the person from leaving. *Alvarenga-Lopez*, 169 Idaho at 219-20, 494 P.3d at 767-68.

Bruck argues that "a reasonable person in [Bruck's] position would not feel free to end the encounter and go about their business" and that "any termination of the encounter was conditional and on the officers' terms" thereby invalidating Bruck's subsequent consent to search his person. In support, Bruck relies on the facts that neither Officer Dixon nor Officer Ferranato told Bruck he was free to go; Sergeant Fiscus stated to Bruck it would be "just a few more minutes" to "check on a few things" for "when and if we kick you loose"; it was dark outside; "at least one officer was present with [Bruck] for the entire twenty-minute phone search except

4

for a brief period"; one or both of the officers were "standing next to [Bruck]" while Bruck sat in his car; Officer Ferranato repeated his offer to give Bruck a ride "in a more strongly worded" manner; and "the only option to leave conveyed to [Bruck] was a ride from Officer Ferranato."

Bruck's argument is not persuasive. Although Sergeant Fiscus's statement about "when and if we kick you loose" indicates the officers still detained Bruck at that point in time, the district court concluded his detention ended shortly *after* that statement when Sergeant Fiscus asked Bruck to retrieve his personal belongings off the hood of a patrol vehicle. Bruck does not challenge this finding. Although neither Officer Dixon nor Officer Ferranato affirmatively stated Bruck was free to leave, this fact does not establish the encounter was not consensual after he retrieved his personal belongings. The United States Supreme Court has previously ruled that "to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary" is "unrealistic." *See Ohio v. Robinette*, 519 U.S. 33, 40 (1996).

As the district court correctly noted, the officers' conduct was not consistent with detention. After Bruck retrieved his personal items, all the officers--other than Officers Dixon and Ferranato--departed the scene, and thereafter no evidence shows that any officer displayed a weapon, physically touched Bruck, used the police vehicle's overhead lights, or positioned himself or his vehicle to prevent Bruck from leaving. *See Alvarenga-Lopez*, 169 Idaho at 219-20, 494 P.3d at 767-68 (identifying factors that may indicate seizure). Rather, Officers Dixon and Ferranato allowed Bruck to collect his personal possessions, to walk around without supervision, to search through his vehicle for his cellphone, and to sit in his vehicle.

Further, Bruck's assertion that Officer Ferranato used "strongly worded" language to compel Bruck's compliance with Officer Ferranato's offers to give Bruck a ride is not persuasive. A review of the officers' videos from their body cameras shows Officer Ferranato used neither wording nor a tone of voice to command or otherwise compel Bruck to ride in the patrol vehicle. Further, contrary to Bruck's assertion, a comparison of Officer Ferranato's statement that "I *can* give you a ride home, man," with his statement that "I *just want* to give you a ride back to your house . . . so you're not stranded over here," does not establish a reasonable person would not feel free to decline the ride and to terminate the encounter.

Bruck also challenges the district court's reliance on *Page* and *Martinez*. The district court ruled that the facts of this case more closely resembled *Martinez*, in which this Court

5

concluded Martinez was not detained, than *Page*, in which the Idaho Supreme Court concluded Page was unlawfully detained. *Compare Page*, 140 Idaho at 845, 103 P.3d at 458 (concluding no compelling reason to detain Page) with *Martinez*, 136 Idaho at 441, 34 P.3d at 1124 (concluding Martinez not detained after officers returned his registration papers). Contrary to the district court's ruling, Bruck argues this case more closely resembles *Page* than *Martinez*. We disagree.

Similar to *Martinez*, the officers in this case did not exhibit any force or authority that would have objectively communicated to Bruck that the officers continued to detain Bruck after Sergeant Fiscus asked Bruck to collect his belongings. *See Martinez*, 136 Idaho at 441, 34 P.3d at 1124 ("Once the registration papers were returned, the police exhibited no express show of force or authority that objectively communicated to Martinez that he was still being detained."). Unlike *Page*, the officers were justified in originally detaining Bruck to investigate his conduct and have him perform field sobriety tests; Bruck does not claim otherwise. *See Page*, 140 Idaho at 845, 103 P.3d at 458 ("[T]he totality of the circumstances . . . showed no compelling need to seize [Page's] identification and conduct a warrants check."). Accordingly, the district court did not err in analyzing and relying on *Martinez* and *Page*.

Based on the totality of the circumstances, Bruck was not detained when Officer Ferranato asked for Bruck's consent to search his person before allowing him to ride in the patrol vehicle, and a reasonable person would have felt free to leave and decline Officer Ferranato's offer of a ride. As a result, Bruck's voluntary consent to the search of his person was valid.

## IV.

## CONCLUSION

The district court did not err by denying Bruck's motion to suppress. Accordingly, we affirm that denial and Bruck's judgment of conviction.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.